(No. 95-CC-0614—

R & G, INC., Claimant, *v.* THE STATE OF ILLINOIS, DEPARTMENT OF TRANSPORTATION, Respondent.

*Opinion filed July 21, 1999.*

GATES, WISE & SCHLOSSER (GORDON W. GATES, of counsel), for Claimant.

JIM RYAN, Attorney General (PHILLIP McQUILLAN, Assistant Attorney General, of counsel), for Respondent.

## OPINION

EPSTEIN, J.

This emergency oral contract claim against the Respondent's Department of Transportation ("IDOT"), now pending on the Claimant's amended complaint, is back before the Court on Respondent's second summary judgment motion. This motion follows our two prior rulings which, *inter alia,* denied the first summary judgment motion without prejudice (*see* order of November 26, 1996; supplemental opinion of May 7, 1997).

Respondent's Second Summary Judgment Motion:
Issues Raised

The Respondent's renewed motion for summary judgment (filed August 14, 1998), considered with the Claimant's response thereto (filed December 23, 1998), raise the following issues:

> 1. Was an oral contract formed between the Claimant and IDOT for Claimant to render labor and equipment services to IDOT for compensation, as Claimant contends; or was Claimant a volunteer in the 1993 flood control efforts, and no such contract was formed, as Respondent contends?

Respondent argues that undisputed facts, at best, show a voluntary undertaking without any IDOT commitment to pay, and a misunderstanding, at worst, precluding a contract formation. Claimant says there are disputed issues of material fact that preclude summary judgment.

> 2. Is this oral contract claim barred by section 9.01 of the (former) Illinois Purchasing Act (30 ILCS 505/9.01) as it was effective in 1993, which prohibited unwritten "State agency contracts for services involving professional or artistic skills * * * involving more than $5,000 * * *" and by section 10 of that Act which provided that a State agency contract "in violation of this Act * * * is void and of no effect."

Citing precedent of this Court and the Supreme Court, Respondent argues that the alleged oral contract in this case—or at least recovery of any amount in excess of $5,000 on such contract—is barred by this statute which was applicable at the time. Claimant contends that this argument was already decided by our supplemental opinion (May 7, 1997) in which we rejected a virtually identical

defense under section 15 of the State Comptrollers Act. (15 ILCS 405/15.) Claimant also argues that section 9.01 of the former Purchasing Act (30 ILCS 505/9.01) is inapplicable to the alleged contract in this case on the theory that sandbag filling is not a "professional or artistic" service.

3. Is this emergency oral contract claim barred by non-compliance with the IDOT regulations governing emergency purchases (44 Ill. Admin. Code 685.295(c), as enabled by 44 Ill. Admin. Code 4200.60, and IDOT Order 21-2, as amended July 1, 1989), which requires an IDOT emergency affidavit and a later written contract, as well as filing of an authorizing affidavit with the Auditor General.

Respondent contends that the (former) Purchasing Act applied to "emergency" contracts, and thus, is fully applicable to this claimed contract, along with the IDOT regulations governing emergency purchases. Claimant contends that the entirety of the section 9.01 Purchasing Act authorization, including any authority to IDOT to regulate emergency purchases of services, is not applicable to the services or contract involved in this claim.

4. Is this claim outside the jurisdiction of the Court of Claims as an implied contract or *quantum meruit* claim?

Respondent argues that this Court lacks jurisdiction to make an award on the equitable unjust enrichment doctrine. Claimant does not address this issue in its response.

5. Is the alleged contract too vague and uncertain to be valid and enforceable?

Respondent contends that the alleged oral contract is far too indefinite and vague to be capable of enforcement, due to its lack of specificity of duration, equipment

involved, equipment rental rates, number of workers, applicability of prevailing wage rates, ability to subcontract, and other unenumerated terms. Claimant contends that this issue was decided against the Respondent in our order of November 26, 1996; and adopts its prior arguments to this Court.

## Analysis: The Factual Issues

The threshhold issue of whether or not an oral agreement was made is entirely a fact issue. Both parties have produced sworn testimony supporting their positions on this issue and on what appears to be a key sub-issue: whether Claimant was a volunteer, or whether the parties agreed that Claimant's work was to be compensated. Both positions are competently evidenced and persuasive. Absent a dispositive admission, this requires a determination by a finder of fact.

Respondent asserts a subjective "misunderstanding" between the IDOT official and Claimant's personnel, and contends that the misunderstanding precludes a contract as a matter of law. The Court does not agree. We find that this record is replete with disputed facts on the misunderstanding issue as well as other contract-formation issues, which precludes summary judgment. We are also unconvinced that the mere fact that one party to a conversation had a different *subjective* understanding of the words used than did the listener is a *per se* legal defense to a "meeting of the minds" for contract formation purposes, although it may be a defense in some circumstances.

A genuine misunderstanding of what was meant by a particular statement may or may not defeat an "agreement," depending on the particular context and circumstances. The issue of contract formation is ultimately determined by the parties' intent *as manifested* by their

communicated words and conduct which often take meaning from the particular context.

In this case, Respondent's "misunderstanding" defense relies on an alleged difference in understanding of an IDOT statement that the Claimant "would be taken care of" (R. Thursby deposition 21, excerpted in Respondent's memorandum of law in support of * * * motion for summary judgment, at 6). There seems to be no dispute that the statement was made and communicated (which is not the usual oral contract dispute over who said what to whom).

Because we find, on the current record, that the statement is somewhat ambiguous, we conclude that summary judgment must be denied. (Indeed, the statement itself is closer to justifying a finding for the Claimant than for the Respondent, but the ambiguity in the words requires us to defer our consideration for a fuller record.) The determination in this case of what was, or was not, reasonably and *objectively* communicated between the parties at the sand pit during the 1993 flood fight—and whether the parties' words and conduct *manifested* an agreement—is peculiarly a determination that should be made by the trier of fact, preferably on a full record with an opportunity to ascertain the credibility of the witnesses.

## Analysis: The Legal Issues

### II. The Purchasing Act Issue.

We need only observe, as Claimant bluntly urges, that this contract does not involve "professional or artistic skills" and is therefore not subject to the limitations of section 9.01 of the former Purchasing Act or its implementing regulations or the construing opinions cited by Respondent. This alleged contract was for sandbag filling, which simply is not a professional or artistic skill. (*See,*

1971 Opinion of the Attorney General S-256.) The sand-bag-filling work in this case involved unskilled labor and the use of earthmoving equipment. The equipment's use may entail some skilled labor, but falls categorically short of "professional or artistic" skills. (This conclusion does not at all disparage the artistry of some operators of this kind of equipment.)

In light of Claimant's argument, we point out that this Purchasing Act argument, which today we reject as inapplicable to this case, is not the same as the argument under section 15 of the Comptrollers Act (15 ILCS 405/15) that we rejected as a matter of law in our previous supplemental opinion. Although both arguments involve statutory requirements for written documentation and filings in State offices, they arise from different statutes. Those statutes, in turn, prescribe significantly different legal consequences for their respective violation. Most significant, of course, is section 10 of the (former) Purchasing Act (30 ILCS 505/10), which voids an otherwise valid State contract that violates that Act; the Comptrollers Act contains no such provision. That makes sense in light of the different underlying purposes of the two statutes, but in any event mandates different results.

III. The IDOT "Emergency" Regulations Issue.

Respondent's argument that this emergency contract claim is barred by IDOT's failure to comply with its own "emergency purchase" regulations (i.e., its failure to file an affidavit with the Auditor General setting forth the emergency conditions that prompted IDOT not to competitively bid the contract, and a subsequent written contract) is a troubling argument.

As we said in connection with the section 15 Comptrollers Act argument, this Court will not allow the State unilaterally to exculpate itself from an otherwise valid

contractual obligation by its failure to comply with an internal State administrative requirement, unless a statute clearly compels that result. Otherwise, the agency, by administrative neglect or capriciousness, could defeat legitimate rights to payment. That would countenance a fraud in some cases.

The record in this case reflects that IDOT has taken the position from the outset that no contract was formed with this Claimant. Given their view that there was no contract, IDOT staffers in perfect good faith would never comply with IDOT's emergency contract regulations. Thus, if the legal opinion of the IDOT staffers were later to turn out to be wrong—as this Court might eventually decide in this case—the Claimant could still never win under Respondent's theory. IDOT's earlier staff opinion (implemented by their failure to do the regulatory paperwork) would always prevail over the contractor's legal rights. Bureaucratic supremacy would trump the contractor's right to be paid by the State forever, and would trump this Court's jurisdiction to decide whether or not the contractor had any rights.

In this case, IDOT takes this argument one step further by asserting the right to create the right of unilateral abrogation of emergency contracts by its administrative rule making power. We presume, of course, that the IDOT regulation is valid and binding. But absent a *statutory* abrogation of an otherwise valid emergency contract due to the agency's failure to comply with its own regulations, this Court will not void the contract for that reason. In this case, the Respondent does not assert a statutory invalidation of the alleged oral sandbagging contract. Respondent instead relies solely on the regulation, which is not enough. We will deny the motion on this point without prejudice; if Respondent can show a statutory mandate to

invalidate the alleged contract due to IDOT's failure to comply with the cited regulations, the Court will reconsider the issue in that light.

IV. Quantum Meruit.

Respondent's contention that this Court lacks jurisdiction to award a *quantum meruit* claim is correct (under the terms of section 8 of the Court of Claims Act (705 ILCS 505/8)) as this Court has held too many times to require citation or discussion. However, the amended complaint does not assert a *quantum meruit* claim. This argument is therefore moot.

V. Vagueness and Enforceability.

Respondent is correct that this Court previously ruled on this point, albeit solely as a pleading matter, without prejudice and subject to the proofs. (order of November 26, 1996.) We find nothing in the Respondent's summary judgment motion that leads us to reconsider this issue at this stage of this case, and we do not find the authorities cited by Respondent to require, or even to support, a dismissal at this stage on this record. However, the Court will again leave this issue open for reargument later on a fuller record.

Order

For the foregoing reasons, it is now ordered:

1. Respondent's motion for summary judgment on the issue of formation of the alleged oral contract is denied; there are disputed questions of material fact;

2. Respondent's motion for summary judgment on the basis of section 9.01 of the (former) Illinois Purchasing Act (30 ILCS 505/9.01) is denied with prejudice;

3. Respondent's motion for summary judgment on the basis of noncompliance with 44 Ill. Admin. Code 685.295(d) and IDOT Order 21-2, as amended July 7, 1989, is denied without prejudice;

4. Respondent's motion for summary judgment against a *quantum meruit* claim for want of subject matter jurisdiction is denied as moot;

5. Respondent's motion for summary judgment for vagueness and consequent unenforceability of the alleged oral contract is denied without prejudice;

6. This case is remanded to the assigned commissioner for trial on the merits.